[No. 68732-3.   En Banc.]
Argued November 28, 2000.    Decided January 25, 2001.

*In the Matter of the Personal Restraint of* JON ROYAL FLEMING, *Petitioner.*

*Jon Royal Fleming*, pro se.
*Suzanne L. Elliott*, for petitioner.

*Gary P. Burleson, Prosecuting Attorney for Mason County*, and *Carol L. Case, Deputy*, for respondent.

IRELAND, J. — In this personal restraint petition, Jon Royal Fleming claims that in light of two psychological evaluations, he should have been afforded a competency hearing before the entry of his guilty plea. Finding that counsel was ineffective in failing to apprise the court that defendant's competence was in doubt following psychological evaluations, we reverse the Court of Appeals, grant the personal restraint petition (PRP) of Jon Royal Fleming, vacate the guilty plea and remand for further proceedings.

## FACTS

Jon Royal Fleming, an inmate at Washington State Penitentiary since 1996, is serving a 20-year sentence for two counts of burglary in the first degree in violation of RCW 9A.52.020 and one count of unlawful possession of a firearm in the first degree in violation of RCW 9.41.040(1)(a). The conviction was based on the petitioner's plea of guilty.

The conviction stemmed from incidents that occurred on February 6, 1996. After consuming quantities of beer and methamphetamine, Fleming went to the home of some friends. He had for some time believed that bikers and FBI or CIA agents were out to get him. He became convinced that they were outside the house and were about to come in and kill him. He told his friends of those beliefs, and also told them that he had two handguns. He asked one friend to drive him to Harstine Island. When the man refused, Fleming allegedly pointed a gun at him and prevented him from leaving. Fleming eventually went to a nearby residence, where he banged on the door and demanded entry,

saying there were people out to get him. The occupant offered to call the police. Fleming declined that offer and demanded entry. He finally left after the occupant fired a warning shot. Fleming broke his leg running away, but managed to make it to another house, where he again demanded entry. The owner did not immediately respond, so Fleming broke in. The owner shot him in the stomach. Due to these February 6 incidents, Fleming was charged with a total of 13 counts in Mason County.

On February 22, 1996, Fleming's first attorney, J.W. Boothe, asked for funds for a "psychological/mental health evaluation." The court authorized Dr. Brett Trowbridge to conduct an evaluation. Boothe withdrew from representation due to her inability to communicate with Fleming.

On March 4, 1996, Dr. Trowbridge opined that Fleming was "psychotic at the time of" the crime. Psychological Evaluation by Brett Trowbridge at 2. Dr. Trowbridge's evaluation goes on to state that Fleming is "marginally competent" to stand trial. *Id.* at 3. The evaluation also states that it is "clear to me that he was unable to distinguish right from wrong and was incapable of appreciating the nature and quality of his conduct due to his paranoid and borderline personality characteristics, as well as his amphetamine psychosis." *Id.* at 3.

On May 2, 1996, Fleming's second attorney, Don Lundahl, moved for an order authorizing mental health services at public expense. During May, Dr. Ulysses Whitehead met with Fleming on five occasions for a total of 15 hours.

On June 20, 1996, Lundahl gave notice that he would be relying on a diminished capacity defense. On June 25, 1996, Dr. Whitehead filed an evaluation concluding Fleming "is presently able to understand the nature and purpose of the proceedings taken against him, but is presently unable to cooperate in a rational manner with counsel in presenting a defense and is not able to prepare and conduct his own defense in a rational manner without counsel and therefore is judged presently mentally *incompetent to stand trial.*"

Psychological Evaluation by Ulysses Whitehead at 9 (emphasis added). Dr. Whitehead's evaluation recommends "[t]he court should seriously consider committing the client to a maximum security unit of a state hospital for intensive and long-term psychiatric care for his chronic and severe psychotic disorder and drug dependence." *Id.*

On July 5, 1996, the court addressed the matter of the Third Amended Information, which did not add new charges, but did add some firearm enhancements. During this proceeding, Charles Bonet appeared, apparently as cocounsel for Fleming, while Lundahl was on vacation. Fleming then requested new appointed counsel, which the court denied.

On July 8, 1996, while represented by Bonet, Fleming entered a plea of guilty. In the *Alford* plea,[1] the prosecutor agreed to recommend to the sentencing judge as follows: (1) dismissal of the remaining charges in the third amendment with prejudice; (2) restitution on all counts; (3) no deadly weapons enhancement; (4) no exceptional sentence; and (5) all time to run concurrently. In addition, Fleming made the following statement in his *Alford* plea agreement:

> I make no admissions, but believe a judge or jury could find me guilty, based upon evidence to be presented at trial, beyond a reasonable doubt. Therefore I wish to take advantage of the State's offer and plead guilty to Counts IV, V, and VII of the third amended information.

Statement of Def. on Plea of Guilty at 3.

Prior to sentencing, Fleming asked to withdraw his guilty plea, causing his attorney, Lundahl, to request withdrawal from representation. After Lundahl withdrew, Fleming's fourth court appointed attorney, Ann Farrell, was appointed. The motion to withdraw guilty plea was based on Fleming's claim that he entered into the guilty plea invol-

---

[1] A guilty plea entered into by a defendant in connection with a plea bargain, without actually admitting guilt; this plea is not considered compelled within the language of the Fifth Amendment if the plea represents a voluntary, knowing, and intelligent choice between the available options. *North Carolina v. Alford,* 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

untarily because his counsel had wrongly informed him of newly discovered damaging information. That motion was denied on September 26, 1996. The court stated: "Mr. Fleming knowing, voluntarily, and intelligently entered a plea of guilty, or entered pleas of guilty on the date in question." Report of Proceedings (RP) at 33. The trial judge subsequently imposed an exceptional sentence of 176 months in prison based on Fleming's extensive prior criminal history and his offender score of 12, which exceeds the maximum offender score of 9.

A notice of appeal was filed, and appellate counsel, Thomas Doyle, was appointed for Fleming. However, counsel found no issue to raise on appeal and promptly filed an *Anders* brief[2] and moved to withdraw. The Court of Appeals permitted the withdrawal of counsel and affirmed Fleming's conviction. The mandate was issued on April 22, 1998.

There is no indication in the record that either Dr. Whitehead's or Dr. Trowbridge's report was ever presented to the various trial court judges who handled this matter. There is no indication that the experts' evaluations were actually sent to anyone other than defense counsel. In addition, counsel did not mention the issue of competency at the plea hearing, sentencing, or during the motion to withdraw the guilty plea. Nothing in the presentence report indicates that the evaluator was aware of the psychological evaluations.

## PROCEDURAL HISTORY

The trial court accepted Fleming's guilty plea, imposed sentence, and denied his motion to withdraw that plea. The Court of Appeals affirmed in a commissioner's ruling on the merits. Fleming subsequently filed a timely PRP raising numerous issues, including a claim that he was incompe-

---

[2] An *Anders* brief is filed by a court-appointed defense attorney who wants to withdraw from the case on appeal based on a belief that the appeal is frivolous. *Anders v. California*, 386 U.S. 738, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967).

tent to plead guilty. The chief judge dismissed the petition and held that the trial court complied with RCW 10.77.060 by ordering the evaluations.

Fleming now seeks review of an order of the chief judge of Division Two of the Court of Appeals dismissing his PRP. This court accepted review and appointed Suzanne Elliott as counsel for Fleming.

## ANALYSIS

Standard of Review

To prevail on a PRP alleging constitutional error for denial of a competency hearing, the petitioner must show he or she is under restraint and the restraint is unlawful under the provisions of RAP 16.4(c). Fleming has been restrained; he is presently incarcerated. He must show that he was denied a competency hearing, and as a result, his guilty plea was "entered in violation of the Constitution of the United States or the Constitution or laws of the State of Washington." RAP 16.4(c)(2). Or Fleming must show that the psychological evaluations were material facts that existed, "which have not been previously presented and heard, which in the interest of justice require vacation of the conviction, sentence, or other order entered in a criminal proceeding or civil proceeding instituted by the state or local government[.]" RAP 16.4(c)(3). The burden of proof is a preponderance of the evidence. *In re Personal Restraint of Cook*, 114 Wn.2d 802, 814, 792 P.2d 506 (1990) (citing *In re Personal Restraint of Hews*, 99 Wn.2d 80, 89, 660 P.2d 263 (1983)).

Competency

The United States Supreme Court has held that the Fourteenth Amendment's due process clause prohibits the conviction of a person who is not competent to stand trial. *Drope v. Missouri*, 420 U.S. 162, 171, 95 S. Ct. 896, 43 L. Ed. 2d 103 (1975); *Pate v. Robinson*, 383 U.S. 375, 378, 86 S. Ct. 836, 15 L. Ed. 2d 815 (1966). The constitutional standard for competency to stand trial is whether the accused has

" 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' " and to assist in his defense with " 'a rational as well as factual understanding of the proceedings against him.' " *Dusky v. United States*, 362 U.S. 402, 402, 80 S. Ct. 788, 4 L. Ed. 2d 824 (1960) (quoting Solicitor General Rankin for the U.S.).

Washington law affords greater protection by providing that "[n]o incompetent person may be tried, convicted, or sentenced for the commission of an offense so long as such incapacity continues." RCW 10.77.050. "Requiring that a criminal defendant be competent has a modest aim: It seeks to ensure that he has the capacity to understand the proceedings and to assist counsel." *Godinez v. Moran*, 509 U.S. 389, 402, 113 S. Ct. 2680, 125 L. Ed. 2d 321 (1993). The two-part test for legal competency for a criminal defendant in Washington is as follows: (1) whether the defendant understands the nature of the charges; and (2) whether he is capable of assisting in his defense. *State v. Hahn*, 106 Wn.2d 885, 894, 726 P.2d 25 (1986); *State v. Ortiz*, 104 Wn.2d 479, 482, 706 P.2d 1069 (1985).

The competency standard for pleading guilty or waiving right to counsel is the same as the competency standard for standing trial. *Godinez*, 509 U.S. at 399.

If the defendant is receiving medication, he may still be competent to stand trial if the medication enables him to understand the proceedings and to assist in his own defense. RCW 10.77.090(7). Before the guilty plea, Fleming received medication; however, no irrational behavior was apparent from the record, nor was there any other indication to show that he did not understand the proceedings.

But, Fleming's psychological report clearly states that he

is presently able to understand the nature and purpose of the proceedings taken against him, but is presently unable to cooperate in a rational manner with counsel in presenting a defense and is not able to prepare and conduct his own defense in a rational manner without counsel and therefore is judged presently mentally incompetent to stand trial.

Psychological Evaluation by Ulysses Whitehead at 9.

Arguably, Fleming fails the second part of the two-part test for legal competency. Accordingly, Fleming might have been found incompetent and should have had a competency hearing before entering a plea of guilty.

Due Process

■ The determination of whether a competency examination should be ordered rests generally within the discretion of the trial court. *State v. Thomas*, 75 Wn.2d 516, 518, 452 P.2d 256 (1969). The factors a trial judge may consider in determining whether or not to order a formal inquiry into the competence of an accused include the "defendant's appearance, demeanor, conduct, personal and family history, past behavior, medical and psychiatric reports and the statements of counsel." *State v. Dodd*, 70 Wn.2d 513, 514, 424 P.2d 302 (1967).

■ ■ Procedures of the competency statute (chapter 10.77 RCW) are mandatory and not merely directory. *State v. Wicklund*, 96 Wn.2d 798, 805, 638 P.2d 1241 (1982). "Thus, once there is a reason to doubt a defendant's competency, the court must follow the statute to determine his or her competency to stand trial." *City of Seattle v. Gordon*, 39 Wn. App. 437, 441, 693 P.2d 741 (1985). Failure to observe procedures adequate to protect an accused's right not to be tried while incompetent to stand trial is a denial of due process. *State v. O'Neal*, 23 Wn. App. 899, 901, 600 P.2d 570 (1979) (citing *Drope*, 420 U.S. 162; *Pate*, 383 U.S. 375).

■ In this case, the trial court did not abuse its discretion because there was no information provided to the trial court judge regarding Fleming's competency. Further, there was no reason to doubt Fleming's competence. The trial judge did not see any irrational behavior in the courtroom, nor were there any psychiatric reports given to the trial court judge.

Even though the trial court judge granted the motions for expenditure of public funds for psychological evaluations, this was done with Fleming's counsel stating in the motion

that these reports were to be used for the diminished capacity and insanity defense, which does not deal with competency during the trial.

Washington cases have taken the position that a trial court does not abuse its discretion if competency issues are raised. *State v. Lord*, 117 Wn.2d 829, 822 P.2d 177 (1991) (statements by defendant concerning his conversations with the devil and conflicts with his counsel do not create a doubt of defendant's competency); *State v. Walker*, 13 Wn. App. 545, 536 P.2d 657 (1975) (uncommunicated history of prior mental health treatment did not warrant reversal).

Here, there is simply nothing in the record that would indicate that before Fleming entered a plea, a judge had read the experts' reports and exercised his or her discretion. There is no transcript of a competency hearing, and no oral or written findings of fact or ruling on competency. Therefore, there is no abuse of discretion.

No Waiver of Competency

The State argues that Fleming waived a judicial determination of competency upon entry of the plea in this case. However, incompetency cannot be waived. RCW 10.77.050 provides, "[n]o incompetent person shall be tried, convicted, or sentenced for the commission of an offense so long as such incapacity continues." It is apparent, therefore, that an incompetent person may not enter into any plea agreement.

Effect of Incompetency on Guilty Plea

A determination that a criminal defendant is not competent to stand trial precludes his effective entry of any plea or waiver of trial. *See generally Ortiz*, 104 Wn.2d at 483. RCW 10.77.050, which states that an incompetent person may not be tried for a crime while his incapacity continues, precludes a proceeding to seek an acquittal on the grounds of insanity under RCW 10.77.080. An incompetent defendant's right not to be subjected to such a proceeding and to seek a stay of trial under RCW 10.77.090 may not be waived on his behalf while he remains incompetent. *Wicklund*, 96 Wn.2d at 805.

"The court shall not accept a plea of guilty, without first determining that it is made voluntarily, competently and with an understanding of the nature of the charge and the consequences of the plea." CrR 4.2(d).

A determination that a criminal defendant is not competent to stand trial precludes his effective entry of any plea, including one of not guilty by reason of insanity. *State v. Smith*, 88 Wn.2d 639, 642, 564 P.2d 1154 (1977), *overruled on other grounds by State v. Jones*, 99 Wn.2d 735, 664 P.2d 1216 (1983).

In this case, the trial court explicitly found that Fleming entered into his guilty plea "knowingly, voluntarily, and intelligently." RP at 33. However, because this conclusion was made at a time when Fleming had been evaluated as incompetent, it is subject to challenge. Without the court having been asked to determine Fleming's competence, the plea is defective.

Ineffective Assistance of Counsel

Fleming argues that he had ineffective assistance because none of his lawyers brought the issue of competency to the trial court's attention.

Ineffective assistance of counsel is "a mixed question of law and fact." *Strickland v. Washington*, 466 U.S. 668, 698, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Because claims of ineffective assistance of counsel present mixed questions of law and fact, we review them de novo. *See, e.g., State v. S.M.*, 100 Wn. App. 401, 409, 996 P.2d 1111 (2000) (citing *State v. White*, 80 Wn. App. 406, 410, 907 P.2d 310 (1995)).

To sustain a claim of ineffective assistance of counsel, the defendant must show: (1) "counsel's performance was deficient," and (2) "the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687.

The first prong of the *Strickland* test "requires a showing that counsel's representation fell below an objective standard of reasonableness based on consideration of

all of the circumstances." *State v. Thomas*, 109 Wn.2d 222, 226, 743 P.2d 816 (1987). To provide constitutionally adequate assistance, "counsel must, at a minimum, *conduct a reasonable investigation* enabling [counsel] to make informed decisions about how best to represent [the] client." *Sanders v. Ratelle*, 21 F.3d 1446, 1456 (9th Cir. 1994) (citing *Strickland*, 466 U.S. at 691).

The second prong requires the defendant to show there is a "reasonable probability" that, but for counsel's conduct of errors, the results of the proceeding would have been different. " 'A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " *State v. Carter*, 56 Wn. App. 217, 218 n.1, 783 P.2d 589 (1989) (quoting *Strickland*, 466 U.S. at 694).

██ ██ As to the first prong, the failure to raise the issue of Fleming's competency was not within the realm of reasonable professional judgment. This court has held that a defendant's counsel does not have the power to waive the defendant's right under RCW 10.77.050. *State v. Coville*, 88 Wn.2d 43, 47, 558 P.2d 1346 (1977).

Even though the state contends that Fleming's lawyers' decisions were based on tactics, no evidence has ever been presented that the psychological evaluations were made available to the court. Therefore, since a plea of guilty must be entered into knowingly, intelligently, and voluntarily, there is a reasonable probability that but for counsel's failure to inform the court, the plea of guilty would not have been accepted while Fleming was deemed incompetent to stand trial. The second prong has been met.

The record before us establishes the following: (1) defense counsel knew there was an expert opinion that Fleming was *incompetent* to stand trial; (2) medical evidence was available at the time Fleming entered into the plea of guilty; (3) defense counsel failed to raise incompetency during all proceedings; (4) defense tactics were not shown during the trial, nor during sentencing; and (5) defense counsel's performance was not reasonable under all of the circumstances of this case. Therefore, Fleming received ineffective

assistance of counsel under *Strickland*, 466 U.S. 668. When defense counsel knows or has reason to know of a defendant's incompetency, tactics cannot excuse failure to raise competency at any time "so long as such incapacity continues." RCW 10.77.050.

## CONCLUSION

Fleming's own attorneys, who had the closest contact with the defendant during the proceedings, never raised the issue that he was incompetent to stand trial, nor did they move for a competency hearing prior to plea or sentencing. Counsel did not provide the court with Dr. Whitehead's evaluation stating Fleming was "incompetent." In addition, there is no indication in the verbatim report of proceedings to show there was some irrational behavior or conduct by Fleming so as to have alerted the trial court that a competency hearing was necessary. Therefore, the court did not err in failing to grant a competency hearing prior to accepting the plea.

Nonetheless, Fleming did not receive effective assistance of counsel because of the failure to advise the court of expert opinion regarding his incompetence. Since the plea cannot be shown to have been entered into knowingly, intelligently, or voluntarily, Fleming's PRP is granted, the guilty plea and sentence vacated, and the case remanded for further proceedings.

ALEXANDER, C.J., SMITH, JOHNSON, SANDERS, and BRIDGE, JJ., and GUY and TALMADGE, JJ. Pro Tem., concur.

MADSEN, J., concurs in the result.